```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
                                  :
EDDIE AKPAN
                                  :
     v.                           :   Civil Action No. DKC 09-1120
                                  :
FIRST PREMIER BANK
                                  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action alleging violations of the Fair Credit Reporting Act and Fair Debt Collection Practices Act is a motion to dismiss filed by Defendant First Premier Bank. (Paper 9). The issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion to dismiss will be granted.

**I.  Background**

This case arises from disputed credit card charges. Plaintiff Eddie Akpan alleges that on or about September 14, 2008, he submitted an online application to Defendant First Premier Bank for a credit card advertised as having "no annual fee [or] other extraneous charges." (Paper 7, Verified Statement of Eddie Akpan ("Decl."), ¶ 2). The credit card arrived, along with an initial account statement, less than one week later. The account statement, dated September 17, 2008,

reflected that the card had an initial credit limit of $250.00, but that only $71.00 of available credit remained at the time it was received.  The statement listed four charges:  (1) a "program fee" of $95.00; (2) an "account set-up fee" of $29.00; (3) a "monthly servicing fee" of $7.00, and (4) an "annual fee" of $48.00.  (Paper 7, Ex. 1).

Approximately one month later, Plaintiff received an account statement showing that he owed Defendant a total of $284.03 and, therefore, was $34.03 over his credit limit.  This statement reflected a total of $67.14 in transactions, a $1.89 finance charge, a $7.00 monthly servicing fee, and a $29.00 late fee imposed upon receiving no payment from Plaintiff during the prior month.  (*Id*. at Ex. 4).  In February 2009, after receiving an account statement reflecting a balance due of $429.18, Plaintiff sent a letter to Defendant complaining of the initial charges on the card, offering to pay $25.00 for his use of the card at a grocery store if Defendant "amend[ed] [the] bill to read $25," and threatening to file suit if the bill was not amended.  (*Id*. at Ex. 2).  Defendant responded by asserting that Plaintiff owed it the full amount on the account statement and, thereafter, allegedly submitted negative credit information regarding Plaintiff to a credit reporting agency.

Plaintiff claims that as a result of Defendant's actions, his credit rating has suffered, thereby making him ineligible for loans at lower interest rates and preventing him from participating in a first-time homebuyer program. Plaintiff further asserts that he is "utterly distraught emotionally" and "cannot sleep, eat or be around people or family because of ominous and harassing phone calls to [his] work and personal phones by a network of debt collectors deployed by [Defendant]." (Paper 7, Decl. at ¶ 12).

On May 1, 2009, Plaintiff, proceeding *pro se*, filed a complaint in this court, generally alleging impropriety on the part of Defendant and demanding $50,000 in damages. (Paper 1). While the complaint failed to identify the grounds pursuant to which relief was sought, the accompanying civil cover sheet invoked federal question jurisdiction and indicated its bases as "Consumer Credit" and/or "Other Fraud." (Paper 1, Att. 5). Defendant moved to dismiss on June 16, 2009. (Paper 5). Thereafter, Plaintiff obtained counsel and timely filed an amended complaint, asserting causes of action under the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, and related provisions of Maryland state law. (Paper 7). Defendant responded on July 22, 2009, by filing a motion to dismiss Plaintiff's amended complaint pursuant to Fed.R.Civ.P.

3

12(b)(6).  (Paper 9).  Plaintiff has failed to file papers opposing this motion.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v.*

*Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)(citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"  *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

**III. Analysis**

   **A.   Fair Credit Reporting Act**

   Plaintiff contends that Defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, by "negligently fail[ing] to follow reasonable procedures to assure maximum possible accuracy of information [it] supplied to

5

consumer credit reporting agencies," and "willfully fail[ing] to comply with the reinvestigation requirements when asked to do so." (Paper 7, ¶ 11).

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). The FCRA creates a private right of action allowing injured consumers to recover "any actual damages" caused by negligent violations and both actual and punitive damages for willful noncompliance. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 239 (4th Cir. 2009); *see also* 15 U.S.C. §§ 1681n, 1681o.

As relevant here, the FCRA imposes duties on "furnishers of information" to credit reporting agencies. 15 U.S.C. § 1681s-2. "Under § 1681s-2(a), [the] FCRA prohibits any person from furnishing information to a [consumer reporting agency] that the person knows is inaccurate." *Saunders*, 526 F.3d at 148; *see also* 15 U.S.C. § 1681(b) (defining "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity"). Where a consumer disputes the accuracy of

6

information that the furnisher has reported, the FCRA requires the consumer reporting agency to notify the furnisher of the dispute, § 1681(a)(2), and upon receipt of this notice, the furnisher must (1) "conduct an investigation with respect to the disputed information," (2) "review all relevant information provided by the consumer reporting agency," (3) "report the results of the investigation to the consumer reporting agency," and (4) "if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis."  15 U.S.C. § 1681-2(b)(1).  The FCRA "explicitly bars suits for violations of § 1681-2(a), but consumers can still bring private suits for violations of § 1681s-2(b)." *Saunders*, 526 F.3d at 149 (citing § 1681s-2(c)).

The allegations contained in Plaintiff's amended complaint do not provide sufficient notice to Defendant as required by Fed.R.Civ.P. 8(a)(2) and as articulated in *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009).  Plaintiff does not allege that he notified a credit reporting agency of a dispute regarding the accuracy of information reported to it, nor does he assert that Defendant was notified by the consumer reporting agency of a dispute such that it could have violated

7

its duties pursuant to 15 U.S.C. § 1681-2(b)(1). *See Rossman v. Lazarus*, No. 1:08cv316, 2008 WL 4181195, *7 (E.D.Va. Sept. 3, 2008) (unpublished) ("Because Plaintiff's Amended Complaint itself fails to allege that [a creditor] received any notification from a consumer reporting agency indicating that Plaintiff disputed the completeness or accuracy of information provided to that agency, Plaintiff has failed to state a claim for relief under FCRA"); *Rollins v. Peoples Gas Light and Coke Co.*, 379 F.Supp.2d 964, 967 (N.D.Ill. 2005) ("only proper notice, including all relevant information received from the consumer, triggers the furnisher's obligation to conduct an investigation under § 1681s-2(b)").

Insofar as Plaintiff argues that Defendant was negligent in failing to report accurate information to consumer reporting agencies, this claim could only arise under § 1681s-2(a), and is, therefore, unenforceable through a private suit. *See* 15 U.S.C. § 1681s-2(c); *Saunders*, 526 F.3d at 149. Thus, Plaintiff has failed to state a claim for relief under the FCRA.

**B.   Fair Debt Collection Practices Act**

Plaintiff further contends that Defendant violated the Fair Debt Collection Practices Act ("FDCPA") by engaging in "unfair and deceptive trade practices." (Paper 7, ¶ 10). Defendant

moves to dismiss this claim, arguing that the FDCPA cannot apply because Defendant is not a "debt collector."

The FDCPA only applies to "debt collectors," as defined by 15 U.S.C. § 1692a(6). *See Eley v. Evans*, 476 F.Supp.2d 531, 533 (E.D.Va. 2007). "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA does not apply to a creditor, *i.e.*, "any person who offers or extends credit creating a debt or to whom a debt is owed," except where the creditor "uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692(a)(4)-(6); *see, e.g., Brown v. Lanham Ford*, No. DKC 09-0753, 2010 WL 313253, *2-3 (D.Md. Jan. 20, 2010) (finding that the FDCPA did not apply to financing company that was not a debt collector); *Scott v. Wells Fargo Home Mortgage Inc.*, 326 F.Supp.2d 709, 717 (E.D.Va. 2003) ("It is well-settled that provisions of the FDCPA generally apply only to debt collectors").

Plaintiff has not alleged that Defendant attempted to collect debts on behalf of a third party or used another name in

9

order to appear to collect debts as a third party. Therefore, he has failed to state a claim upon which relief can be granted under the FDCPA.

  **C.** **State Law Claims**

  Plaintiff additionally raises claims under Maryland state law for defamation and violation of the Maryland Consumer Protection Act. Upon dismissal of the FCRA and FDCPA claims, however, the court will be divested of federal question jurisdiction, the jurisdictional basis implicated by Plaintiff upon filing his original complaint. (Paper 1, Att. 5). While the parties appear to be diverse, because Plaintiff claims only $50,000 in damages, the action does not meet the amount in controversy requirement for diversity jurisdiction. *See* 28 U.S.C. § 1332. Thus, the court will be divested of original jurisdiction over the remaining claims after the federal claims are dismissed.

  "Pursuant to [28 U.S.C.] § 1367(a), when a plaintiff has alleged both federal and state claims, a district court may exercise supplemental jurisdiction over the state claims if they form 'part of the same case or controversy' as the federal claim." *Eriline Co., S.A. v. Johnson*, 440 F.3d 648, 653 (4th Cir. 2006). Subsection (c)(3) of the same provision provides, however, that a district court "may decline to exercise

10

supplemental jurisdiction" where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As the Supreme Court of the United States cautioned in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), "[n]eedless decisions of state law [by federal courts] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."

In light of these considerations, the court will decline to exercise supplemental jurisdiction over the remaining state law claims, which Plaintiff will be free to pursue upon filing suit in an appropriate state court.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted. A separate order will follow.

                                                         /s/
                               DEBORAH K. CHASANOW
                               United States District Judge